IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| **CARLENE E. PARKER,**<br><br> Plaintiff,<br><br>v.<br><br>**CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT,**<br><br> Defendant. | **Case No. 1:23-cv-00078**<br><br>**COMPLAINT AND JURY DEMAND** |

**COMES NOW** Plaintiff Carlene E. Parker (hereinafter referred to as "Plaintiff" or "Ms. Parker"), by and through her undersigned attorney, James C. Larew, Larew Law Office, and for her Complaint and Jury Demand, hereby states as follows:

## INTRODUCTION

1. This is an action under and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Iowa Civil Rights Act, Iowa Code Chapter 216.

2. Under Title VII, 42 U.S.C. § 1981, the Equal Protection Clause of the United States Constitution, the Iowa Civil Rights Act, Plaintiff is protected from discriminatory practices based on her race and skin color, gender, and age, as well as against retaliation for opposing discriminatory conduct.

## PARTIES

3. Plaintiff Carlene E. Parker is a natural-born citizen of the United States of America. She is a legal resident of Cedar Rapids, Linn County, Iowa. She was born on April 29, 1950.

1

She is Black. At the times complained-of herein, Ms. Parker was a W-2 employee of Defendant Cedar Rapids Community School District, where she was employed as a school bus driver.

4. Defendant Cedar Rapids Community School District (hereinafter "Defendant" or "CRCSD") is a school district located and doing business in Linn County, Iowa.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed her administrative complaint with the Iowa Civil Rights Commission on November 10, 2021, within the 300-day limitations period from the last discriminatory act alleged. The Complaint was thereafter cross-filed with the Equal Employment Opportunity Commission.

6. On June 22, 2023, less than ninety days prior to the filing of this Complaint, the Equal Employment Opportunity Commission issued a right-to-sue letter. Plaintiff has timely requested from, and is still awaiting receipt of, the Iowa Civil Rights Commission right-to-sue letter, which was formally requested on September 6, 2023.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in the United States District Court for the Northern District of Iowa pursuant to 28 U.S.C. § 1331, as this case arises out of issues under federal law and pendent jurisdiction of the state law claims under 28 U.S.C. § 1367.

8. Supplemental jurisdiction over Plaintiff's state law claims and breach of contract is proper pursuant to 28 U.S.C. § 1367(a).

9. Venue in the United States District Court for the Northern District of Iowa is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to

this claim of which Plaintiff complains occurred in Linn County, Iowa.

## FACTS

10. Defendant Cedar Rapids Community School District is a public school district that is a political subdivision of the State of Iowa.

11. Defendant educates children in grades preschool through twelfth grade. Defendant's current enrollment is over 16,000 students.

12. Defendant has twenty-one elementary schools, six middle schools, and four high schools, the Cedar Rapids Virtual Academy, as well as alternative schools.

13. Plaintiff is a Black female who was born in 1950 (73 years old).

14. Defendant hired Plaintiff as a bus driver (or Transportation Driver) with the District's Transportation Department in August 2008.

15. Plaintiff remained in this role through the 2020-2021 school year.

16. On or about May 15, 2020, after Ms. Parker had completed performing her normal work duties while employed at CRCSD, while doing maintenance duties in a home for her realtor-employer, Ms. Parker was threatened and physically assaulted by "squatters" that were being evicted from a property. Ms. Parker filed an assault charge; the State of Iowa initiated legal action, resulting in a criminal assault conviction against one of the perpetrators.

17. The assault caused Ms. Parker to develop post-traumatic stress disorder ("PTSD") symptoms.

18. Although she was not formally diagnosed, soon after the assault, Ms. Parker began regularly waking up in the middle of the night, bothered by itching, hives, swelling, and skin-burning sensations.

3

19. In an attempt to alleviate these pains and symptoms, Ms. Parker visited her general practitioner, who recommended that she begin taking over-the-counter medicines.

20. One such medicine recommended by the general practitioner is known as "cannabidiol" – or CBD – which is a legal medicine in the State of Iowa. CBD is the most prevalent active ingredient found in cannabis and is derived from hemp plants.

21. Ms. Parker purchased CBD oil from a local pharmacy, which product was certified as having no traces of any THC (tetrahydrocannabinol) compounds by both a third-party entity to the manufacturer and also by the pharmacy that had sold the CBD product to her.

22. Ms. Parker began using a CBD oil, applied topically to the base of her neck and her temples, to help prevent panic and anxiety episodes.

23. At no time during her employment at CRCSD had Ms. Parker ever, nor since, used or consumed marijuana/THC.

24. As a part of its duties as an employer, Defendant randomly administered to Ms. Parker, in her capacity as a school bus driver, a urinalysis test for illegal substances in April of 2021.

25. When she arrived at the testing facility, Ms. Parker informed Defendant's employees at the drug screening that she was using CBD oils to assist her with her medical conditions.

26. Ms. Parker then completed the drug screening.

27. To her surprise, Ms. Parker's tests came back positive for Delta-9-tetrahydrocannabidol ("THC").

28. Ms. Parker has never imbibed, ingested, or otherwise consumed THC or other illegal THC-containing substances, and told Defendant's employees the same.

29. As such, in response to the initial positive THC test result, Plaintiff requested a second urinalysis be completed by a third-party entity.

30. Prior to taking the second test, one week later, Ms. Parker was placed on administrative leave by CRCSD.

31. In termination proceedings conducted by the School District shortly after her administrative leave, the CRCSD failed utterly in its duty to: provide Ms. Parker with any return-to-duty guidelines as required by the Iowa Department of Education and the Federal Motor Carrier Administration; evaluate properly Ms. Parker's medical history; consider confounding variables and arguments regarding the validity of the urinalysis tests; implement consistent human resource policies across all employees, regardless of gender, race, age, and/or faculties.

32. By April 27, 2021, after Ms. Parker had terminated all use of the CBD oil, another formal urinalysis performed upon her indicated no presence of THC.

33. Prior to and following her termination, CRCSD gave Ms. Parker no options for reinstatement.

34. In addition, at the time Ms. Parker re-applied for employment with CRCSD, her application for bus driver, van driver, and attendant were all summarily declined.

35. In addition, when she reapplied, Ms. Parker was advised that she could not be rehired for a minimum of four years posterior to a positive urinalysis test for THC.

36. Further, upon any such future rehiring by Defendant, Plaintiff has been told that she would be placed at an entry-level position, and any seniority she had earned previously would be discarded.

37. Plaintiff requested that she be allowed to be replaced in her prior capacity as a bus driver

for Defendant, as she had learned that a previous, White male, colleague, similarly-employed, similarly-determined as positive for marijuana use, had been allowed to return to work.

38. Mr. JB, a White middle-aged male, in 2017, within two years of a failed drug test for actual and reportedly admitted marijuana use, was offered, first, an Attendant position in lieu of termination. Shortly thereafter, he was re-hired as a Transportation Driver.

39. Ms. Parker believes that the CRCSD's treatment of herself, as compared to Mr. JB, was disparate and substantially unequal.

40. In an attempt to clarify CRCSD's return-to-duty policy, Ms. Parker wrote, on numerous occasions, dated April 27, May 2, May 10, and May 20, 2021, requesting from CRCSD copies of CRCSD's policies, and an explanation as to the protocols that controlled such return-to-duty policies.

41. At no point did CRCSD inform Ms. Parker of CRCSD's return-to-duty policy, until such time, on May 20, 2021, that Ms. Parker contacted CRCSD directly and indicated she wished to initiate a return-to-duty action. Upon receiving such guidance from the CRCSD, Ms. Parker completed all requirements given to her by CRCSD.

42. Upon completion of her return-to-duty requirements, Ms. Parker was informed that CRCSD, in its review by CRCSD's insurer and the Federal Motor Carrier Safety Administration rules and guidelines, would not re-hire her as a Transportation Driver. A review of the FMCSA's docket, then, and at least through October of 2021, found no alleged FMSCA violation.

43. This is despite the FMCSA requirement that violations be reported within three days of discovery. Ms. Parker interpreted this failure-to-report, as required under federal law, as

evidence that the CRCSD was uncertain of its own proof to support its allegations against her, its resulting termination of her, and its refusal to hire her back in a manner comparable to similarly-situated White male employees.

44. Ms. Parker re-applied for her position as Transportation Driver, and, in the alternative, for a position as Attendant (a non-moving vehicle position). Her application was summarily denied by CRCSD. This is again in direct contrast to Mr. JB's experience, in which he had re-applied for a position after having been reportedly discharged for marijuana use and a positive THC test, was offered a position as Attendant and, less than two years later, was re-hired as a Transportation Driver.

45. Ms. Parker had completed all such return-to-duty requirements made by CRCSD, just as Mr. JB had done. Ms. Parker's termination and subsequent application denial are in stark contrast to the CRCDS's treatment of other comparably-situated persons.

46. Ms. Parker is not aware that any citation was ever filed or issued by the CRCSD to FMCSA based on information that she has obtained from them.

47. In addition, upon being informed by CRCSD that her re-application had been denied in its entirety, Ms. Parker filed an application for employment at College Community Schools. College Community Schools indicated that no THC violation by Ms. Parter had ever been reported to it. It agreed to hire Ms. Parker as a Transportation Driver pending satisfactory UA test results and upon full disclosure regarding her situation at CRCSD. She complied with both requests and was hired by College Community Schools.

48. When Ms. Parker applied for a trainer position many years ago, her application was denied. She felt generally that men were much more likely to be treated better at CRCSD, and granted promotions instead of Ms. Parker, despite her seniority.

7

49. Ms. Parker understood a former colleague, Ms. KR, had felt the same. Ms. KR no longer works at CRCSD. Ms. Parker had also heard from another Black bus driver that he did not feel welcome at CRCSD, and he also no longer works there. He informed Ms. Parker of what he felt in terms of assignments of routes, among others, that Blacks were not treated as well as their non-peoples of color co-workers. Ms. Parker overheard other bus drivers talking about the Black students on their bus in derogatory manners, and it was concerning to Ms. Parker

50. Since her termination by Defendant, Plaintiff has been gainfully employed with another entity in the capacity as bus driver with no issues related to anything, including drug testing, have arisen.

## COUNT ONE

### RACE AND GENDER DISCRIMINATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND IOWA CIVIL RIGHTS ACT, IOWA CODE CHAPTER 216

51. Plaintiff incorporates paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Under the provisions of Title VII of the Civil Rights Act, 42 U.S.C. sections 1981 *et seq*., employment discrimination based on race or gender is prohibited.

53. Pursuant to Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

54. Under the provisions of the Equal Protection Clause of the U.S. Constitution, and the Fourteenth Amendment, all persons are entitled to the equal protection of the laws, and discrimination based on race and gender are prohibited.

55. Under the provisions of the Iowa Civil Rights Act, Iowa Code chapter 216.6.1.a, it is unlawful for an employer or person to discriminate against an employee on the basis of her race or skin color.

56. Plaintiff is a Black woman.

57. Plaintiff experienced discrimination based on her race and gender.

58. Defendant treated Plaintiff differently than White male colleagues employed in comparable positions as the one held by Plaintiff who were reinstated to their positions within two years of their termination resulting from admitted uses of marijuana and resulting elevated THC levels, whereas Ms. Parker has never used marijuana, and had only use a topical ointment at the suggestion of her physician that may have contained trace amounts of THC.

59. Plaintiff suffered adverse actions the CRCSD terminated her employment ended, and she was not reinstated or put on a path to reinstatement of her position in a manner comparable to similarly-situated White middle age men.

60. A causal connection exists between Plaintiff's race and/or skin color and the adverse employment actions.

61. As a proximate result of Defendant's actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for pre-judgment and post-judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as

may be just in the circumstances and consistent with the purpose of the Title VII of the 1964 Civil Rights Act of 1964, and the Iowa Civil Rights Act, Iowa Code chapter 216.

## COUNT TWO

### VIOLATION OF THE EQUAL PROTECTION CLAUSE
### OF THE UNITED STATES CONSTITUTION

62. Plaintiff incorporates paragraphs 1 through 50 of this Complaint as if fully set forth herein.

63. Defendant intentionally discriminated against Plaintiff because of her race and / or gender, as set forth above.

64. Defendant is a state actor for purposes of 42 U.S.C. 1983, and its actions, outlined above, were taken under the color of state law.

65. Defendant, through its agents, servants, and employees in their official capacities, established a policy, regulation, official decision, custom, or usage of reckless or deliberate indifference to the rights of Plaintiff.

66. Defendant maintained and enforced an environment and policies, regulations, and official decisions which unconstitutionally deprived Plaintiff of her rights guaranteed by the Equal Protection Clause to the United States Constitution.

67. Defendant deprived Plaintiff of the rights guaranteed to her under the Equal Protection Clause of the United States Constitution in violation of 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff prays for the following relief:

a. That Defendants' conduct be declared to be in violation of Plaintiff's rights as outlined by the Equal Protection Clause of the United States Constitution;

b. That Defendant and its employees, agents, attorneys, successors and assigns, and those acting in concert therewith be enjoined from any conduct violating Plaintiff's rights or the rights of others similarly situated as secured by the Equal Protection Clause of the United States Constitution, and that the Court order such other injunctive relief as necessary to prevent Defendant from continuing their discriminatory practices and to protect others similarly-situated;

c. That Plaintiff be awarded compensatory damages;

d. That Plaintiff be made whole by providing her compensation for past and future mental and emotional harm and anguish, and other affirmative relief;

e. That Plaintiff be awarded reasonable attorneys' fees and costs incurred in prosecuting this action; and

f. That Plaintiff be awarded such additional and further relief as is just and proper.

## COUNT THREE

**AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 AND THE IOWA CIVIL RIGHTS ACT, IOWA CODE CHAPTER 216**

68. Plaintiff incorporates paragraphs 1 through 50 of this Complaint as if fully set forth herein.

69. Under the Age Discrimination Act of 1967 (ADEA): "It shall be unlawful for an employer—(1) to . . . discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1) (2022).

11

70. Under the Code Chapter 216.6.1.a, it is "an unfair or discriminatory practice" for any entity to "refuse to hire…or to otherwise discriminate in employment against…any employee because of….age."

71. Defendant discriminated against Plaintiff by treating her differently and adversely as compared to middle-aged co-employees who held comparable positions and who were treated differently when Defendant accused such persons of violating THC-related provisions of employment contracts issued for bus drivers.

72. Plaintiff suffered adverse consequences as a result of the termination actions undertaken by Defendant CRCSD, and she was not reinstated or put on a path to reinstatement of her position in a manner comparable to similarly-situated middle age men.

73. A causal connection exists between Plaintiff's age and the adverse employment actions.

74. As a proximate result of Defendant's actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for pre-judgment and post-judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Age Discrimination Act of 1967, and the Iowa Civil Rights Act, Iowa Code chapter 216.

## COUNT FOUR

### RETALIATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AND THE IOWA CIVIL RIGHTS ACT, IOWA CODE CHAPTER 216

75. Plaintiff incorporates paragraphs 1 through 50 of this Complaint as if fully set forth herein.

76. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

77. Under the provisions of the Iowa Civil Rights Act, it is unlawful for an employer to retaliate against an employee because she has engaged in a protected activity.

78. Plaintiff engaged in protected activity by complaining, through appropriate channels, about the discriminatory manner in which she was treated as an employee of the CRCSD as compared to comparably-situated White middle-aged employee with respect to an allegation that she had violated THC policies.

79. Defendant retaliated against Plaintiff by terminating her, first, then, second, refusing to re-hire her to any position in a manner comparable to her peers who had been discharged from employment, but who did not complain about the termination action.

80. A causal connection exists between Plaintiff engaging in protected activity, and the Defendant's retaliation.

81. As a proximate result of Defendants' actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

82. Plaintiff requests relief as set forth more fully set forth below.

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for pre-judgment and post-judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as

may be just in the circumstances and consistent with the purpose of the Age Discrimination Act of 1967, and the Iowa Civil Rights Act, Iowa Code chapter 216.

## COUNT FIVE

## BREACH OF CONTRACT

83. Plaintiff repleads paragraphs 1 through 50 as if fully set forth herein.

84. Plaintiff was an at-will employee of Defendant governed by its Policies, which constituted a valid and legally-enforceable contract between Plaintiff and Defendant.

85. Defendant ostensibly relied on its Policy in terminating Ms. Parker. The clear language of Defendant's Policy, however, does not anticipate a mere positive test, it reads that:

> [I]t is a violation of the Substance-Free Workplace regulation for an employee to unlawfully manufacture, dispense, solicit, possess, **use, or be under the influence of in the workplace** any narcotic drug, hallucinogenic drug, amphetamine, barbiturate, **marijuana or any other controlled substance** or alcohol, **as defined in Schedules 1 through V of section 202 of the Controlled Substances Act (21 U.S.C. 812)** and as further defined by regulation at 21 C.F.R. 1300.11 through 1300.15 and Iowa Code Chapter 124.

86. By the employer's Policy's express language, therefore, an employee must have used or been under the influence of "marijuana or any other controlled substance" as relevant to this matter. *Id*.

87. As defined both by federal and Iowa law, however, .3% or less of THC (or marijuana metabolite) that may be found in CBD oil is not considered a controlled substance, and therefore not prohibited.

88. Ms. Parker only used CBD oil—and, then, at her physician's urging. She never used any other substance during her employment with the CRCSD.

14

89. The test results do not indicate what percent of marijuana metabolite were found in her urine, and therefore, if they were less than .3% THC, it would not be a violation of the School District's Policy or of the applicable law.

90. Defendant, in terminating Ms. Parker based on this Policy without affirming its application, breached the same.

91. In addition, Defendant failed to follow its own policies in providing information and reinstatement processes to Ms. Parker upon her termination.

92. As a direct and proximate result of these breaches of Policies and corresponding termination of Ms. Parker's employment, Ms. Parker has suffered direct and consequential damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for pre-judgment and post-judgment interest, for attorney's fees and expenses, for the costs of this action, and for such other relief as may be just in the circumstances.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment and seeks the following relief:

A. An adjudication that Plaintiff's discharge from employment, as set forth above, was an unfair and/or discriminatory practice;

B. An award of back pay and benefits;

C. An award of lost wages sufficient to compensate Plaintiff for the wage discrimination she experienced;

D. An award of compensatory damages, including emotional pain, suffering, inconvenience and mental anguish;

E. An award of pre-judgment interest as provided by law;

F. An award of offset, as an additional appropriate remedy pursuant to the Iowa Civil Rights Act for any and all income taxes due from her on account of the other damages and/or recovery awards herein;

G. An adjudication that Plaintiff is entitled to equitable relief in the form of orders and injunctive relief requiring Defendant to do the following:

(i) Provide training to supervisory employees regarding how to effectively avoid discrimination in employment on the basis of race or color or age, and to report to the court once every six months for a period of three years on the training provided and on its effectiveness;

(ii) Require that all disciplinary decisions regarding employees employed by Defendant in Iowa be reviewed by an independent EEO agency for compliance with EEO laws and regulations prior to implementation;

(iii) Monitor the environment in workplaces operated by Defendant in Iowa to assure that employees are not being treated unfairly based on race or color or age, and report annually to the court for a period of three years on its monitoring; and

(iv) Test and evaluate supervisory employees working for Defendant in Iowa to assure that they do not exhibit or act upon bias based upon national origin or race or bigoted attitudes and opinions, do not tolerate disparate treatment based on race or color or age, by their subordinates, and report annually for a period of three years on its testing and evaluating.

H. An adjudication that Plaintiff is entitled to her attorney fees and expenses, as well as interest allowed by law and the costs of this action; and

I. Double or treble damages as authorized by Iowa Code § 216.6A and Iowa Code §216.15(9)(a)(9); and

J. Any other relief the Court deems just and appropriate.

## JURY DEMAND

**COMES NOW** Plaintiff and hereby demands a trial by jury of her peers of all matters contained within this Complaint and under the laws of Constitution of the United States and the State of Iowa.

Respectfully submitted,

/s/ *James C. Larew*
James C. Larew AT0004543
LAREW LAW OFFICE
504 East Bloomington Street
Iowa City, Iowa 52245
Telephone: (319) 337-7079
Facsimile: (319) 337-7082
Email: james.larew@larewlawoffice.com
**ATTORNEY FOR PLAINTIFF**